UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                         Plaintiff,

        v.

JOHN A. PAULSEN,

                         Defendant.

**ORDER**

18 Civ. 6718 (PGG)

------------------------------------------------------------

PAUL G. GARDEPHE, U.S.D.J.:

        In this civil enforcement action, Plaintiff Securities and Exchange Commission (the "SEC") asserts that Defendant John Paulsen aided and abetted violations of the securities laws.

        The Complaint was filed on July 27, 2018. (Dkt. No. 11) It asserts four claims: Counts One and Two allege that Paulsen aided and abetted Deborah Kelley's violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Securities Exchange Act, and Rule 10b-5; and Counts Three and Four allege that Paulsen aided and abetted Navnoor Kang's violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Securities Exchange Act, and Rule 10b-5. (Id. ¶¶ 68-83)

        The Complaint seeks an order (1) permanently enjoining Paulsen from violating or aiding and abetting violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5, and Section 17(a) of the Securities Act; and (2) directing Paulsen to pay civil penalties pursuant

to Section 20 of the Securities Act and Section 21(d)(3) of the Securities Exchange Act.[1]  (Id. at 17)

Paulsen moved to dismiss on November 24, 2018.  (Dkt. No. 34)  This Court denied Paulsen's motion in a February 13, 2019 bench ruling.  (Dkt. No. 48)  The SEC moved for summary judgment on July 22, 2019.  (Dkt. No. 72)  This Court denied the SEC's motion on April 18, 2020.  (Dkt. No. 98)

On May 20, 2020, the parties waived their right to a jury trial.  (Dkt. No. 99)  On July 15, 2020, this case proceeded to trial.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 23, 2020, this Court issued an Order setting forth its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).  (Order (Dkt. No. 156))  The Court's factual findings and legal conclusions include the following:

Defendant Paulsen is a former managing director in the New York City office of Sterne Agee & Leach, Inc. ("Sterne Agee"), a registered broker-dealer.  Deborah Kelley was a sales representative at Sterne Agee, and Navnoor Kang was Director of Fixed Income and Head Portfolio Strategist for the New York State Common Retirement Fund (the "Fund").  The Fund was one of Sterne Agee's clients.  (Id. ¶¶ 1, 5, 6, 18)

As of August 2014, both Kelley and Paulsen knew that Kang, as a Fund employee, was prohibited from accepting gifts or benefits of any kind.  (Id. ¶¶ 14, 17)  Despite this knowledge, Kelley provided thousands of dollars' worth of benefits and entertainment to Kang between August 2014 and 2015.  (Id. ¶¶ 15-16, 29, 32-34)  Paulsen aided and abetted Kelley's misconduct in connection with one such improper benefit:  a ski trip to Park City, Utah

---

[1] The SEC has withdrawn its claim for disgorgement.  (Pltf. Br. (Dkt. No. 148) at 43 n.8)

in February 2015, which Paulsen, Kelley, Kelley's husband, Kang, and Kang's girlfriend attended. (Id. ¶¶ 28-29) Paulsen and Kelley spent $12,692 on the ski trip – including expenses related to a hotel room and food for Kang and Kang's girlfriend. Paulsen and Kelley later submitted all of their expenses to Sterne Agee for reimbursement. Kelley and Paulsen made no reference to Kang and Kang's girlfriend in their expense reports, and instead falsely claimed that other firm clients were present in Park City. (Id. ¶¶ 29, 32-34) After Paulsen and Kelley submitted their false expense reports, they exchanged messages in which they agreed to "stay quiet" about the presence of Kang and Kang's girlfriend on the ski trip, and expenditures related to their hotel and food charges. (Id. ¶ 38)

In March 2015, Paulsen left Sterne Agee and took a position at Stonebridge Advisors. Shortly thereafter, Sterne Agee hired lawyers from the Morgan Lewis law firm to investigate Kelley's expense reports. These lawyers contacted Paulsen in April 2015 to arrange an interview. Paulsen then contacted Kelley about the investigation, and the two agreed that Paulsen would delay his interview until after Kelley's interview, so that Paulsen could learn what the investigators asked and how Kelley responded. (Id. ¶ 47)

During her interview on April 29, 2015, Kelley lied to investigators about the ski trip in order to conceal that she and Paulsen had included expenses for Kang and Kang's girlfriend on their expense reports. Kelley relayed to Paulsen the lies she had told investigators, and Paulsen largely repeated those lies during his interview on May 4, 2015. (Id. ¶¶ 48-50, 53)

As to legal conclusions, this Court found, inter alia, that Paulsen knew there was an illegal quid pro quo arrangement between Kang and Kelley, and that Paulsen substantially assisted this illegal arrangement by "(1) paying for Kang and his girlfriend's meal on the trip . . . ; (2) agreeing with Kelley to submit false expense reports concerning the ski trip and then

submitting false and fabricated expense reports . . . ; (3) agreeing with Kelley to 'stay quiet' about the ski trip and instructing [others] not to discuss the trip . . . ; and (4) agreeing with Kelley to lie to the Morgan Lewis investigators, and thereafter repeatedly lying during his interview about what had taken place during the ski trip."  (Id. at 28-31) (citations omitted)

On the basis of these factual findings and conclusions of law, this Court found Paulsen liable for (1) aiding and abetting Kelley's violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act (Count One); (2) aiding and abetting Kelley's violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 (Count Two); (3) aiding and abetting Kang's violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act (Count Three); and (4) aiding and abetting Kang's violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 (Count Four).  (Id. at 32)

## II.     THE SEC'S REQUEST FOR A CIVIL PENALTY

The SEC seeks "second-tier" civil monetary penalties against Paulsen in the amount of $80,000 for each of "two violations" – namely, "aid[ing] and abett[ing] the securities fraud committed by Kang and Kelley, two distinct actors who pleaded guilty to criminal offenses."  The Commission thus seeks a total civil penalty of $160,000.  (Pltf. Br. (Dkt. No. 148) at 44-45)

### A.     Applicable Law

Section 20(d)(2) of the Securities Act, 15 U.S.C. § 77t(d)(2), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), authorize courts to impose civil monetary penalties for violations of the securities laws.  Congress enacted these provisions pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act"), with the dual goals of punishing the individual violator and deterring future violations.  SEC v. Credit

Bancorp, Ltd., No. 99 Civ. 11395 (RWS), 2002 WL 31422602, at *1 (S.D.N.Y. Oct. 29, 2002) (citing SEC v. Moran, 944 F. Supp. 286, 296 (S.D.N.Y. 1996)); see also SEC v. Jadidian, No. 08 Civ. 8079 (PGG), 2011 WL 1327245, at *8 (S.D.N.Y. Mar. 31, 2011) ("The purpose of these penalties is to create meaningful financial disincentives to participating in fraudulent conduct. Congress and the courts have recognized that disgorgement alone is frequently not sufficient[.]").

The Remedies Act provides for three tiers of civil monetary penalties, to be determined "in light of the facts and circumstances." See 15 U.S.C. 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i). The first-tier penalty applies to any violation of the securities laws. See id. The second-tier penalty applies where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." See 15 U.S.C. § 77t(d)(2)(B); 15 U.S.C. § 78u(d)(3)(B)(ii). The third-tier penalty applies where (1) the defendant engaged in conduct involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and (2) that conduct also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." See 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii).

Here, the parties agree that a second-tier penalty applies to Paulsen's violations, because they "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." (See Pltf. Br. (Dkt. No. 148) at 44; Dec. 17, 2020 Def. Ltr. (Dkt. No. 159) at 1-2) Given Paulsen's deception and deliberate or reckless disregard of the securities laws, this Court finds that a second-tier penalty is appropriate.

The Remedies Act provides a maximum civil monetary penalty of the greater of $50,000 per violation, or the gross amount of the pecuniary gain resulting from the violation, for second-tier violations. See 15 U.S.C. § 77t(d)(2)(B); 15 U.S.C. § 78u(d)(3)(B)(ii). The parties

agree that, when adjusted for inflation pursuant to 17 C.F.R. § 201.1001, Table I, for violations that occurred between March 6, 2013 and November 2, 2015, the $50,000 maximum civil monetary penalty is increased to $80,000 per violation.  (Dec. 18, 2020 Def. Ltr. (Dkt. No. 159) at 2; Pltf. Br. (Dkt. No. 148) at 45)

In determining the appropriate civil penalty, courts consider "'(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced in light of the defendant's demonstrated current and future financial condition.'"  SEC v. Rajaratnam, 822 F. Supp. 2d 432, 433 (S.D.N.Y. 2011) (quoting SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)).

### B. Analysis

Here, the first, second and fifth factors all indicate that a significant civil penalty should be imposed.  Paulsen was aware that his conduct was illegal; he lied repeatedly to deceive his employer and investigators about the improper benefits provided to Kang; and Paulsen has substantial financial assets.  (See Paulsen Aff. (Dkt. No. 159-1))  Analysis of the third and fourth factors, however, indicates that the maximum civil penalty would not be appropriate.  There is no evidence that the Fund suffered losses as a result of Kelley and Kang's scheme, and the Defendant's aiding and abetting violations are limited to an isolated incident in February 2015 and his attempts to cover up his, Kelley's, and Kang's wrongdoing in subsequent months.

Having considered all of the circumstances, the Court concludes that a total civil penalty of $100,000 is appropriate:  $50,000 for aiding and abetting Kelley's violations of the securities laws, and $50,000 for aiding and abetting Kang's violations of the securities laws.

By **November 1, 2021**, the SEC will submit a proposed Judgment consistent with this Order and the Court's October 23, 2020 order (Dkt. No. 156). Defendant will submit any objections to the proposed Judgment by **November 5, 2021**.

Dated: New York, New York
October 28, 2021

SO ORDERED.

*[signature]*

Paul G. Gardephe
United States District Judge